```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PACIFIC INDEMNITY COMPANY,           :
                         Plaintiff,  :
       -v-                           :
                                     :
KITON CORPORATION,                   :
                                     :
                         Defendant.  :
------------------------------------------------------------------:
                                     :
KITON CORPORATION,                   :
              Consolidated Plaintiff,:
       -v-                           :
                                     :
PACIFIC INDEMINITY COMPANY,          :
                                     :
              Consolidated Defendant.:
------------------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/24/2022
```

MEMORANDUM & ORDER

21-cv-4391 (LJL)

LEWIS J. LIMAN, United States District Judge:

Plaintiff/Consolidated Defendant Pacific Indemnity Company ("Defendant" or "Pacific") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint (the "Complaint") of Kiton Corporation ("Plaintiff" or "Kiton"). Dkt. No. 19. For the reasons that follow, the motion is granted.

## BACKGROUND

This is one of scores of cases filed in this Court and in courts throughout the state and the nation in which a business has sought insurance coverage for business-interruption losses arising out of business closures as a result of the COVID-19 pandemic and related government orders. For the purposes of this motion, the Court takes as true the well-pleaded allegations of the Complaint.[1] "The Court at this stage may also consider statements or documents incorporated

---

[1] Multiple complaints have been filed in this consolidated action. In its motion to dismiss, Pacific states that it is moving to dismiss "Kiton's Complaint in the Current Action," Dkt. No. 19-1 at 8,

into the Complaint by reference, such as coverage provisions in the insurance contract at issue."
*Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 170 (S.D.N.Y. 2020).

## I.     The Insurance Policy

Kiton is a New York corporation that operates successful, high-quality clothing boutiques in New York, New York; Manhasset, New York; Las Vegas, Nevada; Bal Harbour, Florida; Miami, Florida; Palm Beach, Florida; San Francisco, California; and Houston, Texas. Dkt. No. 1-8 ¶¶ 4, 28. Kiton is the named insured for a commercial general liability insurance policy issued to it by Pacific—policy number 3603-49-33 DTO (the "Policy")—covering the claims period December 31, 2019 to December 31, 2020. *Id.* ¶ 32; *see also* Dkt. No. 1-1. The Policy covers nine of Kiton's stores in the above locations, Dkt. No. 1-1 at ECF p. 15, and the provisions for "Building And Personal Property" coverage state:

> We will pay for direct physical loss or damage to:
> - **building**; or
> - **personal property**,
>
> caused by or resulting from a peril not otherwise excluded, not to exceed the applicable Limit of Insurance for Building Or Personal Property shown in the Declarations.

*Id.* at ECF p. 31.

The Policy also contains provisions for "Business Income With Extra Expense" coverage, which, in relevant part, state:

---

where the "Current Action" is defined as the declaratory judgment action *Pacific* filed, bearing case number 21-cv-4391, *id.* at 7. Its brief in support of its motion to dismiss, however, treats the motion as moving to dismiss Kiton's complaint in what it defines as the "Related Action," which was initially filed in New Jersey state court, was then removed to federal court, was transferred to this District, was consolidated with 21-cv-4391, and bears the case number 21-cv-6956. *See* Dkt. No. 19-1 at 7. That complaint appears at Dkt. No. 1-8 in case number 21-cv-4391 and Dkt. No. 1-2 in case number 21-cv-6956, and, in its brief in opposition to the motion to dismiss, Kiton also treats this motion as against its complaint appearing at Dkt. No. 1-8. The Court, too, will consider the motion against Kiton's operative complaint in the Related Action and will cite to Dkt. No. 1-8 of 21-cv-4391, which is identical in all relevant respects to the Related Action's Dkt. No. 1-2.

> We will pay for the actual:
> - **business income** loss you incur due to the actual impairment of your **operations**; and
> - **extra expense** you incur due to the actual or potential impairment of your **operations**,
>
> during the **period of restoration**, not to exceed the applicable Limit Of Insurance for Business Income With Extra Expense shown in the Declarations.
>
> This actual or potential impairment of **operations** must be caused by or result from direct physical loss or damage by a **covered peril** to **property**, unless otherwise stated.

*Id.* at ECF p. 60.

The Policy's "Business Income With Extra Expense" coverage provides additional coverage for "Civil Authority"; this provision states:

> We will pay for the actual:
> - **business income** loss; or
> - **extra expense**,
>
> you incur due to the actual impairment of your **operations**, directly caused by the prohibition of access to:
> - your premises; or
> - a **dependent business premises**,
>
> by a civil authority.
>
> This prohibition of access by a civil authority must be the direct result of direct physical loss or damage to property away from such premises or such **dependent business premises** by a **covered peril**, provided such property is within:
> - one mile; or
> - the applicable miles shown in the Declarations,
>
> from such premises or **dependent business premises**, whichever is greater.

*Id.* at ECF pp. 62–63.

The Policy defines "Business Income" as:

> A. net profit or loss, including rental income from tenants and net sales value of protection, that would have been earned or incurred before income taxes;
> B. your continuing normal:
>    1. operation; and
>    2. payroll,

3

> expenses;
> C. charges you incur which are the legal obligation of your tenant which would otherwise be your obligations; and
> D. the cost you are required to pay to rent temporary premises when that portion of the premises shown in the Declarations occupied by you is untenable, not to exceed the fair rental value of such untenable portion of the **building** you occupy.
>
> **Business income** does not mean bank interest or investment income.

*Id.* at ECF p. 128.

The Policy defines "Extra Expense" as:

> [N]ecessary expenses you incur:
> A. in an attempt to continue **operations**, over and above the expenses you would have normally incurred; and
> B. to repair or replace any **property**, or to research or restore the lost information on damaged **valuable papers**, records and media, if such action will reduce any loss we would pay under this insurance.

*Id.* at ECF p. 131.

## II.   The COVID-19 Pandemic and Instant Dispute

On or about March 12, 2020, the World Health Organization declared the outbreak of COVID-19 to be a pandemic. Dkt. No. 1-8 ¶ 7. In the wake of that announcement—and in response to the spread of the coronavirus—hundreds, if not thousands, of orders of civil authority were issued across the United States deeming a limited number of businesses to be essential, requiring the closure of non-essential businesses, directing individuals to stay in their homes, and restricting or limiting entry into the United States. *Id.* ¶ 56. Such orders were issued by federal, state, county, and municipal officers, and included orders by the San Francisco Department of Public Health; Palm Beach County, Florida; New York Governor Andrew Cuomo; Nevada Governor Steve Sisolak; and a judge in Harris County, Texas. *Id.* ¶¶ 56–62. The orders impaired or hindered access to Plaintiff's property in all five States in which Plaintiff operates, and as a result of the government-mandated closures and bans against "non-essential" travel and

public gatherings, Plaintiff suffered substantial damages and loss of business income at all of its boutiques across the country. *Id.* ¶¶ 65–69.

In or about early May 2020, Kiton tendered to Pacific notice of claim, apprising Pacific of Kiton's calculable losses and placing Pacific on notice of Kiton's request for business-interruption and property-damage coverage arising from losses stemming from COVID-19. *Id.* ¶ 73. By letter dated June 19, 2020, Pacific denied Kiton's coverage claims as related to all nine of its covered properties in the United States. *Id.* ¶ 74.

Kiton then sued, seeking a declaratory judgment that Pacific has a duty to extend full insurance coverage to Kiton and to indemnify Kiton for losses it sustained as a result of COVID-19 and the closure orders. It also brings a claim for breach of contract, alleging that it was entitled to coverage under the Policy for its loss of business income while its operations were suspended due to the closure orders. *Id.* ¶ 86–97.

## DISCUSSION[2]

Following the submission of Plaintiff's opposition brief in this case, the Second Circuit decided *10012 Holdings, Inc. v. Sentinel Insurance Co., Ltd.*, 21 F.4th 216 (2d Cir. 2021). That decision and its progeny are dispositive of Plaintiff's claims for breach of contract and for a declaratory judgment. In *10012 Holdings*, the Second Circuit considered the appeal of a brick-and-mortar art gallery and dealership in New York City which claimed it was wrongly denied coverage for "Business Income" and "Extra Expense" arising from the business interruptions it had endured as a result of the executive orders issued by the New York governor in response to the COVID-19 pandemic. *Id.* at 219. The policy in *10012 Holdings* was indistinguishable in all material respects from the Policy here. The policy covered the insured for "direct physical loss

---

[2] The Court dispenses with a discussion of the lengthy and relatively complicated procedural history of this case, which is immaterial to the outcome of this motion.

or physical damage to" its property "caused by or resulting from a Covered Cause of Loss," defining "Covered Cause of Loss" as "risks of direct physical loss not otherwise excluded by the policy." *Id.* (internal quotation marks omitted).  The Second Circuit, applying New York law,[3] held:

> in accord with *Roundabout Theatre* [*Co. v. Continental Casualty Co.*, 751 N.Y.S.2d 4 (1st Dep't 2002)] and every New York state court to have decided the issue, that under New York law the terms 'direct physical loss' and 'physical damage' in the Business Income and Extra Expense provisions do not extend to mere loss of use of a premises, where there has been no physical damage to such premises; those terms instead require actual physical loss of or damage to the insured's property.

*10012 Holdings*, 21 F.4th at 222.  Because the insured there "allege[d] only that it lost access to its property as a result of COVID-19 and the governmental shutdown orders, and not that it suspended operations because of physical damage to its property, [the insured] cannot recover under either the Business Income or Extra Expense provisions." *Id.* at 223.  The Circuit also rejected the plaintiff's claim for coverage under the "Civil Authority" provision, which required a showing that the civil authority orders "resulted from a risk of direct physical loss to property in the vicinity of the gallery." *Id.*  The Circuit found the plaintiff's argument that it is entitled to coverage under that provision to be "unpersuasive for at least two reasons." *Id.*  First, "[s]huttering a gallery because of possible human infection does not qualify as 'risk of direct physical loss.'" *Id.*  Second, the complaint did not plausibly allege that the physical presence of COVID-19 in neighboring properties directly resulted in the closure of plaintiff's property, as required under the relevant provision, but alleged that the closure was the direct result of the risk of COVID-19 at the plaintiff's property. *Id.*

Following *10012 Holdings*, the Circuit issued a number of summary orders in cases

---

[3] The parties appear to agree that New York law applies to this dispute, as they apply New York law in their briefs.

raising issues identical to those raised here. In *Rye Ridge Corp. v. Cincinnati Insurance Co.*, 2022 WL 120782 (2d Cir. Jan. 13, 2022) (summary order), the Second Circuit rejected the argument of delicatessens that their insurer improperly denied them insurance coverage for their business losses suffered when the governors of New York and Connecticut issued executive orders limiting the delicatessens' use of their premises for dine-in services. Because the insureds did not "allege any physical damage to their insured premises, and the relevant terms of their insurance policy [were] not materially different from those at issue in *10012 Holdings*," the Circuit held that the district court properly dismissed their complaint. *Id.* at *2. In *Deer Mountain Inn LLC v. Union Insurance Co.*, 2022 WL 598976 (2d Cir. Mar. 1, 2022) (summary order), the Circuit again held that an insured business could not recover on its business-interruption policy for business-income losses resulting from the coronavirus pandemic and related government restrictions. The complaint did not "plausibly allege that [plaintiff's] insured property sustained any physical damage; it merely allege[d] loss of use of that property." *Id.* at *2. And in *SA Hospitality Group, LLC v. Hartford Fire Insurance Co.*, 2022 WL 815683 (2d Civ. Mar. 18, 2022) (summary order), the plaintiff insured, which owned a group of food-service establishments, "sought business interruption coverage for the period in which it was unable to use its facilities due to government orders that limited in-person dining services, which were issued in response to the COVID-19 pandemic." *Id.* at *1. The Circuit held that the insured's argument that it was entitled to coverage because the governmental orders prevented it from using its property for its intended purpose, amounting to a direct physical loss of property, was "foreclosed" by the decision in *10012 Holdings. Id.* at *2. The court affirmed the district court's dismissal of the complaint because the plaintiff alleged "only a loss of use of property with respect to its restaurants, which does not amount to an 'actual physical loss of' property." *Id.*

In *Kim-Chee LLC v. Philadelphia Indemnity Insurance Co.*, 2022 WL 258569 (2d Cir. Jan. 28, 2022) (summary order), the Circuit rejected the claim of an operator of a tae-kwon-do studio to business-income, extra-expense, and civil-authority coverage under its insurance policy. As in the other cases just cited, the Circuit relied on *10012 Holdings* and that the plaintiff could not "base its business interruption claim on loss of possession or access" or "argue that closure due to the risk of 'possible human infection can qualify as risk of direct physical loss.'" *Id.* at *1 (alteration adopted) (quoting *10012 Holdings*, 21 F.4th at 223). As relevant here, the Circuit also considered an alternative basis for relief made by the tae-kwon-do studio: "that the virus itself inflicted 'actual physical loss of or damage to' property." *Id.* (quoting *10012 Holdings*, 21 F.4th at 222). In affirming dismissal of the complaint, the Circuit concluded that the only assertions offered in support of this contention were conclusory:

> Kim-Chee alleges that the virus is "ubiquitous, such that it exists everywhere," that it "was present at, in, throughout, and on Plaintiffs' Premises and property within one mile of Plaintiffs' property," and that "[p]roperty in the immediate area of Plaintiffs' Premises . . . was exposed to the Virus" and "had the Virus on surfaces therein." App'x at 14. These generic allegations are insufficient to state a claim. Even assuming the virus's presence at Kim-Chee's tae-kwon-do studio, the complaint does not allege that any part of its building or anything within it was damaged—let alone to the point of repair, replacement, or total loss. Nor does Kim-Chee explain how, other than by the denial of access, any of its property could no longer serve its insured function. To the contrary, we agree with the district court that the virus's inability to physically alter or persistently contaminate property differentiates it from radiation, chemical dust, gas, asbestos, and other contaminants whose presence could trigger coverage under Kim-Chee's policy.

*Kim-Chee LLC*, 2022 WL 258569, at *2.

Plaintiff here alleges that "the microbial matter propagated from the COVID-19 pandemic, an extremely pernicious disease, attached to the surfaces within the Boutiques, thereby causing direct physical loss and/or damage to the subject properties." Dkt. No. 1-8 ¶ 5. It also alleges that "the COVID-19 contagion sticks to surfaces within properties that then

8

require constant cleaning and/or de-sanitization, rendering the property damaged," *id.* ¶ 23, and "[s]ince the property needs to be remediated, the microbes, virus and/or bacteria resulting from COVID-19 plainly constitutes a direct physical loss to property, thereby triggering coverage," *id.* ¶ 24.  It alleges that "[t]he coronavirus causes a distinct and demonstrable alteration to impacted property," *id.* ¶ 52, and "[w]hen the coronavirus impacts property, like it did Plaintiff's, it renders the property dangerous and potentially fatal," *id.* ¶ 48, rendering "[p]roperty impacted by coronavirus . . . in practical effect, unusable for the purpose of generating business income," *id.* ¶ 49.  Plaintiff alleges that even though the "loss or damage" caused by a virus "is invisible to the naked eye . . . [p]roperty impacted by the coronavirus is just as dangerous as property impacted by fire or fumes," and "the impact of a potentially fatal virus constitutes loss or damage to property."  *Id.* ¶ 51.

This case is indistinguishable from those the Second Circuit considered in *10012 Holdings*, *Rye Ridge*, *Kim-Chee LLC*, *Deer Mtn Inn*, and *SA Hospitality Group*.  Like the policies at issue in those cases, the Policy here covers and is limited to "direct physical loss or damage to property."  Any minor variations in language are immaterial.  Plaintiff argues here that its factual allegations must be taken as true and reasonable inferences drawn in its favor, but the Circuit rejected an almost-identical argument in *Kim-Chee*, holding that the plaintiff's "generic allegations are insufficient to state a claim."  2022 WL 258569, *2.  Plaintiff alleges that the coronavirus was present on its property and the surfaces of its property, but as in *Kim-Chee* "the complaint [here] does not allege that any part of its building or anything within it was damaged—let alone to the point of repair, replacement, or total loss" or "explain how, other than by the denial of access, any of its property could no longer serve its insured function."  *Id.* at *2.

Plaintiff alleges that its property is rendered "dangerous" by the presence of coronavirus

9

in/on it, Dkt. No. 1-8 ¶¶ 48, 51, but these allegations do not save its claim.  Plaintiff does allege that there was "a change or alteration of the insured structure or property," proof of which "[c]ourts commonly require . . . to establish that [the insured] suffered damage or loss."  *Kim-Chee LLC v. Philadelphia Indem. Ins. Co.*, 535 F. Supp. 3d 152, 159 (W.D.N.Y. 2021).  As the Circuit recognized in *Kim-Chee*, "the virus's inability to physically alter or persistently contaminate property differentiates it from radiation, chemical dust, gas, asbestos, and other contaminants whose presence could trigger coverage under Kim-Chee's policy," which is identical in all material respects to the Policy.  2022 WL 258569, at *2 (citing with approval *Kim-Chee LLC*, 535 F. Supp. at 159); *see also Kim-Chee LLC*, 535 F. Supp. at 159 ("The presence of the COVID-19 virus in the air or on surfaces of a covered property does not qualify as damage to the property itself.  The virus is short-lived . . . and is rendered harmless by the passage of a few days of exposure to the covered property.").  The conclusion that Plaintiff has not alleged a direct physical loss is supported not only by the Second Circuit's decision in *Kim-Chee* but also by the "unbroken line of trial court decisions, [where] federal courts applying New York law have ruled that the closure of businesses due to the suspected presence of the virus . . . do not qualify as direct physical loss or damage," *Kim-Chee LLC*, 535 F. Supp. at 158, and by those of other courts that "have concluded that contamination which is short-lived or does not prevent the use of the structure does not qualify as direct physical loss," *id.* at 160.

      Finally, Plaintiff argues that the Court should draw an inference from the absence of a "virus exclusion" that the Policy is intended to cover losses caused by virus.  Dkt. No. 24 at 11–12.  The Second Circuit has rejected the identical argument:  Plaintiff "has not shown it suffered a covered loss under its policy, and the absence of the virus exclusion does not alter this conclusion."  *Kim-Chee*, 2022 WL 258569, at *2.  As the Second Circuit has recognized, "[t]he

absence of an exclusion cannot create coverage; the words used in the policy must themselves express an intention to provide coverage." *Id.* (quoting *Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795, 805 (6th Cir. 1996)).

Plaintiff has identified no intervening decision by the New York courts that would undermine the decision of the Second Circuit in *10012 Holdings* or *Kim-Chee*. Accordingly, it follows that Plaintiff's complaint fails to state a claim for relief.

## CONCLUSION

The motion to dismiss is GRANTED. Because Plaintiff has identified no facts it could allege that would support coverage under the Policy, the dismissal is with prejudice. *See, e.g., Plaza Athenee Hotel Co. Ltd. v. Continental Cas. Co.*, 2022 WL 902647, at *4 (S.D.N.Y. Mar. 27, 2022) (dismissing similar complaint with prejudice). The Clerk of Court is respectfully directed to close Dkt. No. 19 and to close the case.

SO ORDERED.

Dated: June 24, 2022
New York, New York

LEWIS J. LIMAN
United States District Judge